UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| | ) | Case No. 11 CR 0533 |
| THERESA NEUBAUER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

Defendant Theresa Neubauer was convicted by a jury of one count of knowingly and willfully engaging in a false statement scheme, and ten counts of knowingly and willfully making false statements, in violation of 18 U.S.C. § 1001. The counts relate to Ms. Neubauer's role in a scheme by the Village of Crestwood to conceal from the United States Environmental Protection Agency ("U.S. EPA") and the Illinois Environmental Protection Agency ("Illinois EPA") that it was, for many years, using well water to supplement its drinking water supply. Now before the court are Ms. Neubauer's motion for a judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, and motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33. For the following reasons, the motions are denied.

### I. LEGAL STANDARDS

Under Rule 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The defendant moving for a judgment of acquittal "'faces a nearly insurmountable hurdle'" because the court "'consider[s] the evidence in the light most favorable to the

Government, defer[s] to the credibility determination of the jury, and overturn[s] a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" *United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999) (quoting *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir. 1997)).

Under Rule 33, a court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant or deny a motion for [a] new trial rests within the sound discretion of the trial court." *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989). The court may grant a new trial when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993) (citation omitted). Rule 33 motions are disfavored and granted only in extreme cases. *See, e.g.*, *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998).

## II. BACKGROUND & EVIDENCE PRESENTED AT TRIAL

Ms. Neubauer served as Crestwood's Water Department Clerk and Water Department Supervisor from approximately 1981 to 2008. The indictment alleged that Crestwood officials, including Ms. Neubauer, engaged in a multi-year scheme to conceal the fact that Crestwood was supplementing its primary drinking supply, Lake Michigan water, with water drawn from an underground well. Pursuant to the Safe Drinking Water Act of 1974, a federally mandated regulatory scheme for the protection of public drinking water, the U.S. EPA has granted primary enforcement responsibility for public water systems in the State of Illinois to the Illinois EPA. 42 U.S.C. § 300g-2. In concealing the use of the well, the indictment alleged, Crestwood violated several U.S. and Illinois EPA regulations, including monitoring requirements.

Relevant to the false statements charges against Ms. Neubauer are various reporting obligations that are imposed on community water systems under state and federal regulations.

2

First, water systems must disclose to their customers in an annual Consumer Confidence Report ("CCR") the sources of water used for public drinking water, and provided a copy of the CCRs to the state. Second, officials are required to submit to the Illinois EPA a Monthly Operation and Chemical Analysis Report ("MOR") disclosing information about the sources of water used by the community. Finally, officials are required to submit an Annual Water Use Audit form, also known as an LMO-2 form, to the Illinois Department of Natural Resources (or, prior to 1995, to the Illinois Department of Transportation). The LMO-2 form requires the community to report, for a twelve-month period, the amount of water its water system drew from Lake Michigan and from other sources, so that state regulators can calculate the amount of water distributed and the amount of water lost by the community's water system.

Prior to trial, Ms. Neubauer moved to dismiss the indictment for lack of federal jurisdiction. She argued that the federal government lacks authority over the false statements concerning Crestwood's drinking-water supply allegedly included in these reports because the statements were submitted not to the U.S. EPA, but to the Illinois EPA. The court denied the motion. (Mem. Op. & Order June 8, 2012, ECF No. 59.) Ms. Neubauer also moved to suppress statements she made to agents of the U.S. EPA, arguing that the statements resulted from an unlawful custodial interrogation and were involuntary. The court concluded that Neubauer was not in custody at the time of the interrogation, the statements were voluntary, and no evidentiary hearing on the motion to suppress was required. (*Id.*) The court denied Ms. Neubauer's motion to reconsider that ruling. (Order June 26, 2012, ECF No. 67.)

A jury trial began on April 22, 2013. The testimony and exhibits presented at trial demonstrated that Crestwood did not report the use of the well in any of the documents it was required to file under state and federal regulations. Crestwood's CCRs, filed between 1999 and

2008, stated that Crestwood's drinking water consisted solely of Lake Michigan water purchased from the Village of Alsip. The MORs submitted to the Illinois EPA from 1987 to 2007 stated that the well was on "standby" status and that "zero" gallons were pumped from it. From 1982 until about 2008, Crestwood's LMO-2 forms neither reported the water drawn from the well nor accurately accounted for the amount of water distributed and lost by the village water system. Because Crestwood did not report the water pumped from the well, the unaccounted for flow in its water system was below the mandated limit each year, even though Crestwood's system was actually experiencing large water losses.

The government introduced at trial various Water Department files seized from Crestwood's village hall. The LMO-2 files, which were completed by an engineering firm on the village's behalf, contained duplicate versions of forms for the years 1985-1995. One version reflected the use of the well, and a second adjusted version omitted the amounts pumped from the well. A cover letter attached to one form indicated that the sheets showing the use of the well were for Crestwood's information only, and that the adjusted form that did not show the water pumped from well could be submitted to the state. The LMO-2 forms showed that each year between 1982 and 2007, Crestwood pumped more water than it had purchased from Alsip.

Water Department supervisor Thomas Strutzenberg testified that the chain of command with respect to Crestwood's water operations included the mayor, the village services director, the certified water operator and public works supervisor, and himself. No evidence showed that Ms. Neubauer had any responsibility over the operation of the well or the decision to conceal its use from regulators. No exhibit contained correspondence about the well or about the village's reporting obligations that was addressed to Ms. Neubauer.

Rather, the evidence presented at trial demonstrated that Ms. Neubauer assisted with the preparation of the various documents sent to regulators. She completed the forms, transmitted and transcribed information about water usage onto the forms, and mailed and faxed the forms. A Crestwood Village secretary testified that a spreadsheet of figures used to complete one of the forms was written in Ms. Neubauer's handwriting. The evidence also suggested that Ms. Neubauer provided information on water usage to the engineering firm which prepared the LMO-2 forms. Ms. Neubauer signed a number of the MORs with the name of Crestwood's certified water operator. The CCRs, which were signed by the mayor, included her notary stamp. Other forms included notations indicating they had been handled by Ms. Neubauer. Her initials or handwriting suggested that she had mailed or faxed the documents. Ms. Neubauer also mailed letters to the Illinois EPA in March and April 2000, in response to a demand for sampling of the well water, that stated that the well was on standby status.

U.S. EPA Special Agent William Oros interviewed Ms. Neubauer on April 29, 2009. He testified at trial that during the interview, she stated that operating the well was not her idea, and that she had no information about when the well's pump was turned off or on. She explained that she had prepared the CCRs using information from the Illinois EPA. She stated that a spreadsheet of well readings, which showed that more water was being pumped than was purchased from Alsip, was in her handwriting. She routinely signed the MORs on behalf of the certified water operator, with his permission.

Oros testified that Ms. Neubauer stated that she "wasn't going to say that she didn't know the pump was being operated." She also "indicated that she was aware that the well was being used for the past ten years routinely." She wrote "not true" next to the zeros on one of the MORs, and "indicated that she knew that the pump was running at the time that these zeros were

being put on there and that they were fictitious." Oros further testified that Ms. Neubauer "indicated that she was signing those documents and submitting the CCRs knowing that the well was operating at the time, and that she knew they were inaccurate."

At the close of the government's case, Ms. Neubauer moved for a judgment of acquittal pursuant to Rule 29 and renewed her pretrial motions. (Mot. for Acquittal, ECF No. 111.) The court reserved ruling on the Rule 29 motion. On April 29, 2013, the jury found Ms. Neubauer guilty of eleven counts of engaging in a false statement scheme and of knowingly and willfully making false statements, in violation of 18 U.S.C § 1001. On June 26, 2013, Ms. Neubauer filed a post-trial motion for a judgment of acquittal, pursuant to Rule 29, or a new trial, pursuant to Rule 33. (Mot. for Acquittal, ECF No. 122.)

### III. ANALYSIS

#### A. Rule 29

The jury was instructed with respect to the false statement scheme that the government was required to prove beyond a reasonable doubt that: "1. The defendant concealed or covered up a fact by trick, scheme or device; and 2. The fact was material; and 3. The defendant acted knowingly and willfully; and 4. The defendant concealed or covered up the material fact in a matter within the jurisdiction of the executive branch of the government of the United States." (Final Jury Instructions 15, ECF No. 116.)

With respect to the ten substantive counts of knowingly and willfully making false statements, the jury was instructed that the government was required to prove beyond a reasonable doubt that: "1. The defendant made a statement or representation; and 2. The statement was false or fictitious; and 3. The statement or representation was material; and 4. The defendant acted  knowingly and willfully; and 5. The defendant made the statement or

representation in a matter within the jurisdiction of the executive branch of government of the United States." (Final Jury Instructions 16, ECF No. 116.) These instructions were consistent with the Seventh Circuit's pattern jury instructions and with 18 U.S.C. § 1001(a). *See also United States v. Dick*, 744 F.3d 546, 552 (7th Cir. 1984) ("A section 1001 conviction requires proof of a false material statement made knowingly and willfully in a matter within the jurisdiction of a federal agency.").

Ms. Neubauer argues that the government presented insufficient evidence with respect to the final two elements of each count. Specifically, she claims that the evidence was insufficient to support a finding that she possessed the requisite knowledge or intent to participate in a scheme to conceal material facts or to make false statements. She further argues that the government failed to prove that she concealed a material fact or made a false statement in a matter within the jurisdiction of the executive branch of the United States government.

1. Evidence of Knowledge and Willfulness

Ms. Neubauer argues that she was merely a clerk who performed administrative duties for Crestwood's water department. Unlike Crestwood's elected officials, she made no decisions regarding the operation of the water system, was not certified as a water operator, and had no knowledge of the technical requirements of the regulations promulgated under the Safe Drinking Water Act. She was not responsible for reading water meters or gathering the data included in the various reports submitted to regulators. She claims that, although she knew the well was being used, she did not learn that it was being mixed with Crestwood's drinking water until after that information became public knowledge. When completing the MORs and CCRs, she did not know that the well water was being pumped into the drinking water system.

7

As the jury was instructed, "[a] person acts knowingly if she realizes what she is doing and is aware of the nature of her conduct, and does not act through ignorance, mistake, or accident," and "[a] person acts willfully if she acts (1) voluntarily and intentionally, and (2) with the intent to do something the law forbids." (Final Jury Instructions 21-22.)

In this case, the evidence demonstrated that Ms. Neubauer personally communicated false statements to state regulators. Although she claims that she did not understand the nature of those statements because the regulations promulgated under the Safe Drinking Water Act are complicated, the court agrees with the government that no technical know-how was required to understand that the statements were false. The various forms required Crestwood to report the sources of its water supply. Among Ms. Neubauer's responsibilities was to document the amounts of water purchased by Crestwood, the amounts pumped, and the amounts billed to residents. The information that Ms. Neubauer recorded on the various forms indicated that the well was shut off and that no water was being pumped from it. The evidence demonstrated, however, that materials regularly crossed Ms. Neubauer's desk that showed that the well was in use, and Agent Oros testified that Ms. Neubauer "indicated that she was aware that the well was being used for the past ten years routinely."

Considering the evidence presented at trial in the light most favorable to the government, the jury was presented with sufficient evidence to conclude that Ms. Neubauer indicated on reports submitted to regulators that the well was not being used to supplement Crestwood's water supply, knowing at the time that such statements were false because the well was indeed being used. The evidence was thus sufficient to support the jury's finding, beyond a reasonable doubt, that Ms. Neubauer knowingly and willfully engaged in a scheme to conceal material facts and

knowingly and willfully made false statements to regulators regarding Crestwood's use of the well to supplement its drinking supply.

2. Federal Jurisdiction

Ms. Neubauer argues that the government has failed to satisfy the federal jurisdiction element of 18 U.S.C. § 1001, which applies to schemes to conceal material facts and to false statements made "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." She contends that no such jurisdiction exists because the U.S. EPA granted primary enforcement responsibility over the Safe Drinking Water Act regulations to the Illinois EPA.

The court addressed this argument in its ruling on Ms. Neubauer's pre-trial Motion to Dismiss the Indictment (ECF No. 58). In its June 8, 2012 order, the court explained that "[o]ther circuits have held that the grant of primary authority by the U.S. EPA to a state agency to enforce public-water regulations does not strip the agency of federal jurisdiction under § 1001(a)." (Order June 8, 2012 at 4, ECF No. 66.) Finding these cases persuasive, the court held that statements about the use of the well made to the Illinois EPA fell within the U.S. EPA's authority for purposes of § 1001(a). (*Id.* at 6.) The court further stated:

> With respect to the statements in the MORs, this court finds there is a sufficient nexus between the alleged false statements in the monthly reports about drinking-water sources submitted to the Illinois EPA and the function of the U.S. EPA to regulate the public drinking-water supply to bring the statements within the jurisdiction of the federal agency.

*Id.* at 6. The court adheres to those conclusions, and holds that the government has satisfied the federal jurisdiction element of § 1001(a).

**B. Rule 33**

Ms. Neubauer argues generally that the cumulative effect of errors made in the court's rulings on her oral and written motions prior to and during trial entitle her to a new trial in the interests of justice. The court reaffirms its rulings on Ms. Neubauer's pre-trial motion to suppress her statements to law enforcement, along with its other pre-trial rulings. No errors at trial entitle Ms. Neubauer to a new trial, and the court denies her Rule 33 motion accordingly.

### IV. CONCLUSION

For the reasons explained above, the court denies Ms. Neubauer's motions for a judgment of acquittal and a new trial.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: August 16, 2013